IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


JARRETT INDUSTRIES, INC.          *
                                  *
                                  *
                                  *
v.                                *     Civil Action No. WMN-14-3653
                                  *
DELTA PACKAGING, INC. <u>et al.</u>     *
                                  *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

### <u>MEMORANDUM AND ORDER</u>

Before the Court is a motion for preliminary injunction filed by Plaintiff Jarrett Industries, Inc. (Jarrett).  ECF No. 4.  Defendants have opposed the motion and a hearing was held on the motion on December 9, 2014.  For the reasons that follow, the motion will be denied.


### I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of the decision of Defendant Allen Schwartz to leave his position as a sales representative with Jarrett in September of this year and to take a position as a sales representative with Defendant Delta Packaging, Inc. (Delta) a week or so later.  Both Jarrett and Delta are in the packaging materials industry although, as explained below, they function in very different capacities within that industry. Jarrett filed this action in the Circuit Court for Baltimore County on or about November 6, 2014, and alleged in its Complaint that, by entering into employment with Delta, Schwartz

violated various confidentiality, non-competition, and non-solicitation covenants in his employment contract.  Compl. ¶ 11. Jarrett also alleges that Delta was bound by and violated certain non-competition and non-solicitation provisions contained on the back of purchase orders that had been submitted to Delta by Jarrett.  Id. ¶ 16.  Jarrett had purchased corrugated packaging materials from Delta for more than fifteen years using these purchase orders.

Jarrett further alleged in its Complaint that, "prior to terminating his employment with Jarrett, Schwartz began contacting customers and prospective customers of Jarrett and solicited them to conduct business with Delta instead," id. ¶ 18, and that "[a]fter terminating his employment, Schwartz continued to use Jarrett's confidential information to solicit Jarrett's past and existing customers and prospective customers to conduct business with Delta instead." Id. ¶ 19.  Based upon these allegations, Jarrett asserted the following claims: Intentional Interference with Business Relationships against Schwartz and Delta (Count I); Breach of Contract against Schwartz (Count II); Breach of Contract against Delta (Count III); and, Intentional Interference with Contractual Relations against Delta (Count IV).

On November 17, 2014, Jarrett filed its Motion for Temporary Restraining Order and Preliminary Injunction.  ECF No.

4.   Defendants removed the action to this Court on November 20, 2014, on the basis of this Court's diversity jurisdiction. After removal, Defendants filed an opposition to Jarrett's motion.   ECF No. 15.   At the hearing on the motion, Jarrett presented a single witness, its president, Leslie Leeb. Defendants presented the testimony of Defendant Schwartz, as well as Delta's president, Samuel Willman.

As a preliminary observation, the Court notes that it found both Schwartz and Willman to be particularly straightforward and credible witnesses.   Schwartz testified that on September 8, 2014, he met with his direct supervisor, Alan Soskin, and handed him his letter of resignation.   Consistent with the terms of his employment contract with Jarrett, the letter stated that he was giving Jarrett his 30 day notice.   At that meeting, he also turned over to Soskin his company laptop, along with the stick drive and paper files containing information about his customers.   He testified that he subsequently had his home computer swiped to remove all information pertaining to Jarrett and its customers as well.

Jarrett decided not to extend Schwartz's employment for the thirty day notice period.   At Soskin's request, Schwartz did come into Jarrett's offices the next day to go over client information with the sales representative that would be taking over his accounts.   He also provided Jarrett with his e-mail

3

contact list so that Jarrett could contact his former customers
to inform them he had resigned and that they should no longer
send requests to that e-mail address.  In the weeks that
followed, Schwartz did receive a few e-mails and cellphone calls
from former customers and, in each instance, he forwarded them
to Jarrett.

Schwartz testified that he made all of his former customers
aware that he had a non-compete provision in his Jarrett
contract and that he would not be able to continue to handle
their business.  He also made Delta aware of the non-compete and
Willman testified that neither Schwartz nor any other Delta
sales representative is soliciting any of Schwartz's former
customers for business.  Furthermore, if any of Schwartz's
former customers contact Delta to do business, Delta is asking
to be excused from the relationship until this legal dispute is
resolved.

During the brief period between Schwartz's beginning his
employment at Delta and the commencement of this litigation,
Delta did have some contact with customers that had been
serviced by Schwartz while he was at Jarrett, although that
contact did not appear to have involved Schwartz.  Willman
testified that one of Schwartz's former customers, Fila,
contacted Delta to inquire about purchasing packaging material.
Willman believes that one of Delta's other sales representatives

may have previously contacted Fila.  Fila placed an order with Delta but Delta cancelled that order once it received a cease and desist order from Jarrett's counsel.  Delta was also contacted by a few other Jarrett customers, including the Johns Hopkins Applied Physics Lab, but, in each instance, Delta asked to be excused from the relationship until this litigation is resolved.

While it appears undisputed that Delta is not selling and has not sold to any of Jarrett's customers, Jarrett's president, Leslie Leeb, testified that she believes that her company has been irreparably harmed because it has lost several of its customers that had been serviced by Schwartz, including Fila and the Johns Hopkins Applied Physics Lab.  Leeb also testified that one particular prospective customer that Schwartz had been soliciting for about two years, Teleflex, will not return Jarrett's calls.  Leeb stated that she believed that Teleflex would generate millions of dollars for Jarrett.  Leeb further testified that it is her understanding or assumption that these relationships were lost because, in some shape or form, either directly or indirectly, Schwartz had interfered with those relationships.  She also states that she believes that Schwartz has shared Jarrett's confidential and proprietary information with Delta and encouraged Delta to go after those clients.

In its motion for a preliminary injunction, Jarrett asks the Court to restrain and enjoin Schwartz: from working for any of its competitors, including Delta; or, from soliciting any customer, vendor, supplier, or prospective customer of Jarrett to do business with any other entity or to stop doing business with Jarrett.  It also asks that the Court restrain and enjoin Delta from employing Schwartz or soliciting any customer, vendor, supplier, or prospective customer of Jarrett.

## II. LEGAL STANDARD

The Fourth Circuit has observed that a preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." Centro Tepeyac v. Montgomery Cnty., 722 F.3d 184, 188 (4th Cir. 2013) (quotation marks and citation omitted.)  Such extraordinary relief is granted only on a clear showing of entitlement. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam).  To obtain a preliminary injunction under Rule 65(a), the movant must satisfy all four factors articulated by the Supreme Court in Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008): (1) that the movant is "likely to succeed on the merits," (2) that the movant is "likely to suffer irreparable harm in the absence of preliminary relief," (3) that the "balance of equities tips in [the movant's] favor," and (4) that

6

"an injunction is in the public interest."  See also Pashby v.
Delia, 709 F.3d 307, 320 (4th Cir. 2013).

**III. DISCUSSION**

The Court finds that Plaintiff has not made a clear showing
as to any of the four Winter factors.

As to the likelihood of success on the merits, the Court
must consider whether Jarrett is likely to prevail on any of the
four claims it asserts.  Jarrett's two interference claims are
premised on Leeb's assumption that Schwartz and/or Delta are
somehow poisoning the well with Schwartz's former customers.  A
potential alternative explanation for Jarrett's loss of these
customers, however, is apparent from Leeb's own testimony and
the questioning and argument of Jarrett's counsel.

Leeb testified that Jarrett had been "courting" Teleflex
for about two years but, in describing the nature of that
courtship, referenced only activity of Schwartz.  She recounted
that Schwartz had worked diligently to sample products, to send
Teleflex quotes about various materials and, in Leeb's words,
was "instrumental in putting it all together."  In the same
vein, in answer to questions from Jarrett's counsel, Schwartz
acknowledged that for most of his existing customers it was true
that, without him, they would not know who Jarrett Industries
was.  He was the face of Jarrett and the one with whom they had
a relationship.  While Jarrett may have had good business

reasons for terminating Schwartz's employment the day after he offered his 30 day notice, Jarrett apparently did little to smoothly transition these existing and prospective customers to new sales representatives.  If Schwartz was the face of Jarrett to most of his customers, as Jarrett readily acknowledges, it is not particularly surprising that his abrupt departure might jeopardize some of those relationships.

Turning to the merits of Jarrett's contract claims, Jarrett may be able to prove some aspect of its contract claim against Schwartz.[1]  From the evidence produced thus far, it would not appear that Schwartz has used or is using Jarrett's confidential information to solicit customers.  He may, however, have violated the non-compete provision simply by going to work for a "Competitor."[2]  It would appear that Delta might also be in

---

[1] Defendants proffer that Jarrett first breached the employment contract when it unilaterally terminated a profit sharing program that initially had been a part of that contract.  It appears, however, that at the same time Jarrett terminated the profit sharing agreement, it also raised Schwartz's salary to more than compensate for that loss.  Although this and other actions on the part of Jarrett clearly diminished Schwartz's enthusiasm for continuing his employment with Jarrett, it is unlikely that Schwartz can establish that the termination of the profit sharing arrangement was a material breach of contract on the part of Jarrett.

[2] While Delta probably falls within the scope of "Competitors" as defined in Schwartz's employment agreement, see ECF No. 4-3, Non-Disclosure, Non-Solicitation, Non-Competition Agreement ¶ 5, the Court notes that Delta's business is very different than that of Jarrett.  Jarrett functions solely as a broker of packaging materials, designing custom packaging materials for

violation of some aspects of the fine print on the back of Jarrett's purchase orders, but Delta might also have some viable defenses to the enforcement of those provisions.

Assuming that Jarrett could establish a breach of contract by either Schwartz or Delta, Jarrett would still have the burden of proving that the damages it is claiming were proximately caused by that breach.  CR-RSC Tower I, LLC v. RSC Tower, LLC, 56 A.3d 170, 195 n.41 (Md. 2012).  As noted above, however, it is not clear that the damage claimed, i.e., the loss of a few customers, was caused by any conduct in breach of these agreements.  The customers could have stopped dealing with Jarrett simply because Schwartz left Jarrett, not because he went somewhere else.

As to the second Winter factor, the likelihood of Jarrett suffering irreparable harm in the absence of preliminary relief, the Court finds no such likelihood.  Even were the Court to accept that Delta's initial handling of the Fila matter was a cause of Jarrett's loss of that business, the Court also finds that Delta has voluntarily taken steps to prevent any similar occurrence during the pendency of this litigation.  No further loss seems imminent.

---

customers and then connecting them with appropriate vendors of a
wide variety of materials.  Jarrett actually manufactures
nothing.  Delta, in contrast, manufactures ninety-five percent
of the packaging that it sells and focuses primarily on
corrugated box material.

As to the last two Winter factors, the Court finds that they do not tip decisively in either direction.  While Jarrett has an equitable interest in protecting its confidential business information, Schwartz has an interest in maintaining gainful employment.  Schwartz has worked his entire career in the packaging industry and actually came to Jarrett with a significant background in packaging.  Similarly, the public has an interest in the enforcement of reasonable restrictive covenants in employment contracts.  On the other hand, the public also has an interest in market competition and, perhaps of more significance here, in having a professionally and vocationally qualified individual maintain the best suited employment.

The Court will deny Jarrett's request for the extraordinary remedy of injunctive relief.  While Jarrett may be able to establish that Delta's previous conduct caused it harm, particularly as related to contacts with Fila, the evidence presented to the Court thus far provides little support for the conclusion that any additional harm is imminent.  Should discovery reveal that Defendants are acting in a manner inconsistent with their current representations, Jarrett can certainly bring that to the Court's attention.

Accordingly, IT IS this 16th day of December, 2014, by the United States District Court for the District of Maryland, ORDERED:

1) That the motion for preliminary injunction filed by Plaintiff Jarrett Industries, Inc., ECF No. 4, is DENIED; and

2) That the Clerk of the Court shall transmit a copy of this Memorandum and Order to all counsel of record.

_____/s/_____
William M. Nickerson
Senior United States District Judge
